UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLETA GRIGORESCU,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BOARD OF TRUSTEES OF THE SAN MATEO COUNTY COMMUNITY COLLEGE DISTRICT, et al.,<br><br>　　　　Defendants. | Case No. 18-cv-05932-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Docket No. 29 |

Plaintiff Violeta Grigorescu filed her second amended complaint ("SAC") against the San Mateo County Community College District ("District") and two of its employees, Eugene Whitlock and Charlene Frontiera (collectively "Defendants"). The Court previously dismissed Ms. Grigorescu's first amended complaint with leave to amend. Docket No. 25. Ms. Grigorescu's SAC asserts various federal law violations, which include 42 U.S.C. sections 1983 and 1981, and Title VII. Currently pending before the Court is Defendants' motion to dismiss the SAC. Docket No. 29 ("Mot."). Having considered the Parties' briefs, accompanying submissions,[1] and the oral argument of counsel, the Court **GRANTS** in part and **DENIES** in part Defendants' motion to dismiss, but provides Ms. Grigorescu leave to amend.

///
///
///

---

[1] Submissions include documents of which the Court previously took judicial notice. *See* Docket No. 25.

# I.     FACTUAL AND PROCEDURAL BACKGROUND[2]

A.    Factual Background

In 2004, Ms. Grigorescu started to work for the District as a lab tech at the College of San Mateo ("CSM"). *See* SAC ¶¶ 1, 35. Starting in 2011, Ms. Grigorescu began to experience problems with her employment with the District when she organized a group called Friends of CSM Gardens." *Id*. ¶¶ 5, 41. In September 2011, Friends filed a lawsuit against, *inter alia*, the District in state court. *See Friends of the Coll. of San Mateo Gardens v. San Mateo County Cmty. Coll. Dist.*, No. CIV 508656 (Cal. Super. Ct.).[3]

In July 2014, Mr. Whitlock became Vice Chancellor of Human Resources. *Id*. ¶ 57. Mr. Whitlock, an attorney, advised and represented the District in the state environmental lawsuit that Friends filed against the District in 2011. *Id*.

In October 2014, a full-time position for a physics teacher became available. *Id*. ¶ 59. In March 2015, Ms. Grigorescu applied for the position, but Mr. Whitlock removed her from the application pool and accused her of "dishonesty and . . . misrepresenting her educational credentials." *Id*. ¶ 60.

In June 2015, Mr. Whitlock informed Plaintiff that he was recommending her suspension and termination on the ground that she had "falsely claimed she had a master's degree and the equivalency of a minor in mathematics." *Id*. ¶ 77. Shortly thereafter, a *Skelly* hearing[4] took place before a District employee who upheld the proposed suspension and termination. An administrative hearing followed the *Skelly* hearing. The administrative hearing officer later issued her findings and recommendations stating there was insufficient cause to terminate Ms.

---

[2] Much of the facts alleged in the SAC are pled in the FAC and discussed in Docket No. 25. For purposes of brevity, the Court will not recite the facts in detail, unless where necessary.

[3] The environmental litigation made its way through the intermediate court of appeal and state supreme court. *See Friends of the Coll. of San Mateo Gardens v. San Mateo County Cmty. Coll. Dist.*, 11 Cal. App. 5th 596 (2017).

[4] A *Skelly* hearing is a pre-termination hearing for a public employee, in which the employer must provide, at minimum, "notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." *Skelly v. State Pers. Bd.*, 15 Cal. 3d 194, 215 (1975).

Grigorescu's employment because the District did not meet its burden to establish dishonesty or falsified information. However, the hearing officer found Ms. Grigorescu engaged in a pattern of dishonesty by misrepresenting that she possessed a minor in mathematics, but this dishonesty did not support termination.

In December 2015, Ms. Grigorescu filed a complaint with the California Department of Fair Employment and Housing ("DFEH") against the District. In her complaint, Ms. Grigorescu asserted that Mr. Whitlock and Ms. Frontiera had personal animosity against her and that the adverse employment actions were also motivated by "intentional disability discrimination." Subsequently, after receiving her right-to-sue notice, Ms. Grigorescu filed a lawsuit in state court. The state-court filing contained allegations related to disability discrimination and/or failure to accommodate.

After filing the state court action, Ms. Grigorescu continued to have problems with her employment. She sought a flexible work schedule to teach a class at San Francisco State University ("SFSU") on Friday mornings, but the District refused to accommodate her schedule. SAC ¶¶ 84, 87.

In March 2016, Ms. Grigorescu learned of the District's intent to suspend and terminate her from her lab tech position because she missed six consecutive Fridays. SAC ¶ 91. This event prompted her to file an amended petition and complaint in the state court action, which asserted multiple causes of action centered on disability discrimination and/or failure to accommodate.[5]

In April 2016, Ms. Grigorescu was informed of the proposed termination due to her decision to accept employment at SFSU that conflicted with her employment at CSM on Fridays. SAC ¶¶ 83–93. Thereafter, in June and July 2016, a second *Skelly* hearing took place. *Id.* ¶ 95. This time, the hearing officer recommended termination "due to prior discipline: alleged

---

[5] Ms. Grigorescu subsequently filed additional amended pleadings in state court. In May 2018, the state court issued a tentative ruling denying Ms. Grigorescu's writ petition. In the tentative, the state court denied the writ petition because Ms. Grigorescu did not lodge an administrative record or file moving papers in support of the writ. Since the tentative ruling, there has been no other filings in the state court action or hearings scheduled. The case is still marked "Active," and the court has not ruled on the employment discrimination causes of action asserted in the operative amended complaint.

3

misrepresentation of her math minor, and alleged misrepresentation of her Baccalaureate high school diploma." *Id*. ¶ 96. In January 2017, Ms. Grigorescu's employment as a lab tech was terminated. *Id*. ¶ 97. Mr. Whitlock did not allow Ms. Grigorescu to return to campus to retrieve her personal belongings until September 2018, with close supervision and prearrangement. *Id*. ¶¶ 4, 98.

B. Procedural Background

The District terminated Ms. Grigorescu's employment on January 19, 2017. SAC ¶ 97. On February 13, 2018, Ms. Grigorescu filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that she was subject to retaliation and discrimination on the basis of sex, national origin, age, and disability.

On September 2018, after receiving a notice of right to sue from the EEOC, Ms. Grigorescu filed the instant action. On April 24, 2019, this Court dismissed Ms. Grigorescu's FAC with leave to amend. Ms. Grigorescu subsequently filed this SAC alleging the following eight claims for relief:

- First Claim for Relief (42 U.S.C. § 1983): Defendants Mr. Whitlock and Ms. Frontiera retaliated against Ms. Grigorescu for exercising her First Amendment rights through her activism with Friends.
- Second and Eighth Claims for Relief (42 U.S.C. § 1981): Defendants Mr. Whitlock and Ms. Frontiera harassed Ms. Grigorescu, failed to promote, and ultimately terminated her employment because of her race.
- Third through Seventh Claims for Relief (Title VII): Defendants terminated, discriminated, and harassed Ms. Grigorescu because of her race/national origin and gender, and retaliated against her because she engaged in protected activity by opposing unlawful employment practices.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil

4

Procedure 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted).[6] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

### III. DISCUSSION

A. Third through Seventh Claims (Title VII)

Ms. Grigorescu asserts various Title VII claims. The Court previously dismissed these claims for failure to timely exhaust administrative remedies but gave Ms. Grigorescu leave to amend to allege a better factual basis for equitable tolling. She has not done so.

To litigate a Title VII claim in federal district court, a plaintiff must have timely exhausted her administrative remedies. *See Greenlaw v. Garrett*, 59 F.3d 994, 997 (9th Cir. 1995). With respect to Title VII,

> a charge must be filed with the EEOC within 180 days after the alleged unlawful employment practice occurred, except that when the person aggrieved has initially instituted proceedings with a state or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such EEOC charge shall be filed by

---

[6] A court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

> or on behalf of the person aggrieved *within 300 days* after the alleged unlawful employment practice occurred, or within 30 days after receiving notice that the state or local agency has terminated the proceedings under the state or local law, whichever is earlier.

42 U.S.C. § 2000e-5 (emphasis added). The 180 day limit applies here because Ms. Grigorescu did not initiate the DFEH charge until January 18, 2018, which was 365 days after the termination.

Following this Court's prior dismissal on timeliness grounds, Ms. Grigorescu filed the SAC which makes one new factual allegation regarding timeliness of her EEOC charge and supplies additional details relating to the state court litigation to support her equitable-tolling argument. She also makes a continuing-violation argument.

### 1. Continuing Violation

"A discrete retaliatory or discriminatory act occur[s] on the day that it happen[s]." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002) (internal quotations omitted). Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. *Id.* at 114. "[A] Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period—180 or 300 days—set forth in 42 U.S.C. § 2000e–5(e)(1). A charge alleging a hostile work environment claim, however, will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and *at least one act falls within the time period*." *Id.* at 122 (emphasis added).

"Generally, a Title VII plaintiff may not base a claim on conduct occurring outside the statutory time period for filing a charge (*i.e.*, 300 days before the charge is filed). However, under the continuing violations doctrine, acts that fall outside the statutory time period may be actionable." *Scott v. Gino Morena Enterprises, LLC*, 888 F.3d 1101, 1112 (9th Cir. 2018) (citing *Morgan*, 536 U.S. at 122). "When it would be unreasonable to expect the plaintiff to perceive offensive conduct as Title VII harassment before the limitations period runs, or the earlier discrimination may only be recognized as actionable in light of events that occurred later . . . , the continuing violation doctrine applies." *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999) (internal quotations omitted). "On the other hand, the continuing violation doctrine has delineated limits. Where a pattern of harassment spreads out over years, and it is

6

evident long before the plaintiff sues that she was a victim of actionable harassment, she 'cannot reach back and base her suit on conduct that occurred outside the statute of limitations.'" *Id*. In determining whether the continuing violation doctrine applies to certain events, the court must look to each event or to a series of events to see if the plaintiff should have been aware that the events constituted actionable harassment. *See Burrell v. Crown Cent. Petroleum, Inc.*, 255 F. Supp. 2d 591, 606 (E.D. Tex. 2003).

Ms. Grigorescu alleges that after her termination in January 2017, the District banned her from the campus, and she was unable to retrieve her personal belongings until September 27, 2018—thereby creating a "continuing violation." SAC ¶¶ 97, 98.

However, her termination, if done on the basis of race, national origin or sex, as Ms. Grigorescu alleges, was a discrete and completed act on which she could sue under Title VII and which she should have recognized as actionable. The continuing violation doctrine thus does not extend the running of the statute of limitations beyond her termination,

Furthermore, the alleged ban on her access after termination does not constitute an "unlawful employment practice" under Title VII because she does not allege facts inferring that the ban was in furtherance of a discriminatory policy or practice against Romanians. *See Edner v. NYCTA-MTA*, 134 F. Supp. 3d 657, 665 (E.D.N.Y. 2015) (no continuing violation doctrine after discrete act of termination because plaintiff alleges no facts suggesting that any post-termination acts were in furtherance of discriminating against Haitian employees or that they occurred within the 300-day period); *see also Burkhart v. Am. Railcar Indus., Inc.*, 603 F.3d 472, 476 (8th Cir. 2010) (no continuing sexual harassment violation where employee's allegations that fell within the statutory period complained about shunning from her coworkers, her later suspension, and her termination—all of which are not related to continuing sexual harassment).

The alleged ban, therefore, cannot have the effect of extending the window to file an administrative complaint. *See* 42 U.S.C. § 2000e-2; *see also Davis v. Louisiana State Univ.*, 876 F.2d 412, 413 (5th Cir. 1989) ("Davis's claims accrued when she was expelled and barred from the campus; it matters not, for purposes of prescription, that she remains expelled and barred now."). Ms. Grigorescu's post-employment allegations cannot be considered as an adverse employment

7

action because access to campus is not a post-employment benefit. *Cf. Bryant v. Covina-Valley Unified Sch. Dist.*, 2018 WL 6016924, at *3 (C.D. Cal. Jan. 10, 2018) ("courts have extended Title VII's antiretaliation provision to actions undertaken post-employment [where an employer denies a plaintiff a post-employment benefit, such as challenging unemployment compensation in retaliation for filing a prior EEOC charge].") As such, the Court finds that the continuing violation doctrine does not apply.

2. <u>Equitable Tolling</u>

Ms. Grigorescu filed two DFEH complaints in December 2015 and in January 2018. SAC, Exs. A, B. Ms. Grigorescu concedes neither were timely for exhausting the EEOC-charge requirement, the latter of which being "90 days out-of-time" because she filed with the EEOC after 300 days from the last discrete discriminatory act—January 19, 2017. But, Ms. Grigorescu was actually governed by the 180-day deadline since she did not initiate her claim with the DFEH until 365 days after her termination, which makes her administrative charge tardy.

Ms. Grigorescu asserts she is entitled to equitable tolling on her failure to timely exhaust administrative remedies on her federal claims based on her state court lawsuit.

"Long-settled equitable-tolling principles instruct that generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013), *aff'd and remanded sub nom United States v. Kwai Fun Wong*, 135 S.Ct. 1625 (2015) (internal quotations and citations omitted). "Equitable tolling is typically granted when litigants are unable to file timely [documents] as a result of external circumstances beyond their direct control." *Harris v. Carter*, 515 F.3d 1051, 1055 (9th Cir. 2008). Equitable tolling is, however, to be applied only sparingly. *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990). Courts have been generally unforgiving when a late filing is due to a plaintiff's failure "to exercise due diligence in preserving his legal rights." *Nelmida v. Shelly Eurocars, Inc.*, 112 F.3d 380, 384 (9th Cir. 1997) (quoting *Irwin*, 498 U.S. at 96).

The Court previously dismissed Ms. Grigorescu's Title VII claims for failure to timely

exhaust administrative remedies but permitted her leave to amend to allege a better factual basis for equitable tolling. Ms. Grigorescu, however, provides no *new* factual allegations as to why her state court filing should equitably toll her time to file an EEOC charge. In other words, Ms. Grigorescu has not provided the Court with any "extraordinary circumstances" (or any excusable neglect) that prevented her from timely exhausting her federal claims with the EEOC. *See e.g.*, *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999) (equitable tolling appropriate where employee did not file on time because her attorney-client relationship, like the rest of her relationships with men, was seriously damaged by the egregious conduct—rape and sexual assault—that she seeks to redress in her lawsuit against her employer); *Irwin*, 498 U.S. at 96 (equitable tolling is not warranted for "a garden variety claim of excusable neglect").

Ms. Grigorescu argues that she was excused from earlier filing of her EEOC charge because the state court suit raised sufficiently similar claim justifying the delay. Equitable tolling may be justified where new claims are "like or reasonably related to the allegations contained" in a pending action. *Green v. Los Angeles Cty. Superintendent of Sch.*, 883 F.2d 1472, 1475 (9th Cir. 1989) (quoting *Brown v. Puget Sound Elec. Apprenticeship & Training Trust*, 732 F.2d 726, 728 (9th Cir. 1984)). Ms. Grigorescu argues that the federal claims before the Court now are "like or reasonably related" to the allegations in the 2015 DFEH charge and the state lawsuit that followed. But Ms. Grigorescu's 2015 DFEH charge and subsequent state court action only allege disability discrimination claims—there were no claims based on race, national origin, or gender. Such claims are not like or reasonably related to the disability claims raised in the state court action. *See e.g.*, *Beale v. GTE Cal.*, 999 F. Supp. 1312, 1319 (C.D. Cal. 1996), *aff'd sub nom. Beale v. GTE-California*, 141 F.3d 1173 (9th Cir. 1998) ("Because the case law does not support Plaintiffs' argument that race and national origin discrimination claims are 'like or reasonably related to' age or sex discrimination claims, the Court finds that they have failed to exhaust the administrative remedies available for their race and national origin discrimination claims."); *Wilson v. United Airlines, Inc.*, 1998 WL 754602, at *2 (N.D. Cal. Oct. 23, 1998) ("The Court finds that plaintiff's disability claims are not 'reasonably related to' her initial charge of sex and race discrimination, and, consequently, plaintiff is barred from pursuing her disability claims in this action."). Ms.

Grigorescu has not shown why her claim of race and national origin discrimination would reasonably be expected to grow out of an investigation into her claim of disability discrimination.

The Court **GRANTS** Defendants' motion to dismiss the SAC's Title VII claims **with prejudice** for failure to exhaust administrative remedies.

B.  <u>Second and Eighth Claims for Relief: 42 U.S.C. Section 1981 (Race-based Termination and Harassment)</u>

The Section 1981 claims are only potentially viable against defendants Mr. Whitlock and Ms. Frontiera because the District is immune under the Eleventh Amendment.

1.  <u>Harassment</u>

To demonstrate race-based harassment, a plaintiff must show: "(1) that she was subjected to verbal or physical conduct of a racial nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 686 (9th Cir. 2017).

The Court previously found that Ms. Grigorescu failed to plead specific allegations demonstrating that Mr. Whitlock and Ms. Frontiera scrutinized her credentials because she was Romanian, or that the scrutinization of academic credentials constituted severe or pervasive conduct. The SAC alleges the following:

> Mr. Whitlock and Ms. Frontiera "jointly or severely [] engaged in a severe or pervasive course of conduct directed at Plaintiff . . . . includ[ing], but [] not limited to: (i) failing to accommodate Plaintiff's temporary physical disabilities; (ii) interfering with Plaintiff's medical care; (iii) depriving Plaintiff of her preferential hiring rights as an adjunct physics teacher; (iv) unjust and unwarranted verbal and written criticisms; (v) three unjustified suspensions in less than nine months; (vi) initially denying Plaintiff an opportunity to interview for a full time, tenure track position as a physics teacher; then, when challenged by Plaintiff's union and CSM's academic senate, provided Plaintiff an inadequate, hostile interview; (vii) denying Plaintiff's repeated requests for an alternative work schedule for her lab job to, among other things, deprive Plaintiff of the opportunity to teach part-time elsewhere; (viii) attempting to terminate her from her classified position as an adjunct physics teacher without good cause; and (ix) terminating Plaintiff's employment for pretextual reasons. Each of the foregoing acts or omissions to act is an unlawful employment practice which violates Government Code §12940, *et seq*., including

Plaintiff's race.

SAC ¶ 118. Importantly, on their face, none relates to or are predicated on race-based discrimination. The only exceptions inferably based on race (based on other allegations in the SAC) are: (1) the failure to hire Ms. Grigorescu for the full-time physics professorship because, as alleged elsewhere in the SAC, Defendants selected an individual with less experience of a different race, and (2) her final termination. As discussed below, Ms. Grigorescu has failed to allege a prima facie case of discrimination. In any case, viewed in toto, Ms. Grigorescu has not sufficiently alleged a pattern of race-based harassment. *See Stewart v. Monogram Biosciences*, 2011 WL 6140899, at *5 (N.D. Cal. Dec. 9, 2011) (dismissing race-based harassment because alleged harassment of supervisor yelling "shut up" or higher scrutiny of plaintiff's expense reimbursement forms were not tied to plaintiff's race.); *accord Roof v. Howard Univ.*, 501 F. Supp. 2d 108, 115 (D.D.C. 2007) (university criticizing its professor's academic prowess was not sufficiently tied to race for race-harassment claim).

As such, because Ms. Grigorescu failed to amend her complaint to plead factual allegations to support harassment tied to race, the Court **GRANTS** Defendants' motion to dismiss Ms. Grigorescu's Section 1981 claim for race-based harassment **with prejudice**.

2. Race-based Termination

With Ms. Grigorescu's race-based termination claim, the Court previously found that she failed to allege facts that show the following: that the candidate who replaced her was similarly situated; that she was subjected to stricter credential equivalency requirements relative to other similarly situated individuals; and that there existed any anti-Romanian animus. Docket No. 25. The Court granted Ms. Grigorescu leave to amend to demonstrate that other similarly situated candidates were treated more favorably.

Ms. Grigorescu claims she was not hired as a full-time instructor and ultimately discharged because of her race. SAC ¶ 148. To demonstrate race-based termination, a plaintiff must show that she (1) was a member of a protected group; (2) was qualified for the position; (3) was discharged or suffered an adverse employment action; and (4) that similarly-situated, non-protected employees were treated more favorably. *McDonnel Douglas Corp. v. Green*, 411 U.S.

11

792, 802 (1973); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143–49 (2000). Ms. Grigorescu has plainly alleged the first three elements.

As to (4), Ms. Grigorescu alleges that an individual of a different race and inferior qualifications filled her position. SAC ¶ 148. Her replacement was not Romanian, recently received a master's degree, and had less teaching experience. *Id*. However, Ms. Grigorescu did not allege that her alleged replacement was hired at or close in time to her termination. If there was a substantial gap in time, the new person may not be similarly situated, and an inference of discrimination becomes problematic. Despite initially ruling from the bench that Ms. Grigorescu pled a *prima facie* case of race discrimination, the Court further considered the matter and instead finds she has not alleged a *prima facie* case and **GRANTS** Defendants' motion to dismiss **without prejudice**. Ms. Grigorescu may replead her race discrimination claim under Section 1981 to set forth factual allegations that her replacement assumed her prior position in a timeframe that would lead to a reasonable inference of discrimination, provided she can do so consistent with Rule 11.

Ms. Frontiera, however, does not appear in the allegations related to this claim. Ms. Frontiera is therefore **DISMISSED** from this claim **with prejudice**.

C. First Claim for Relief: 42 U.S.C. Section 1983 (Retaliatory Harassment)

Like the Section 1981 claims above, Ms. Grigorescu's Section 1983 claim is potentially viable against defendants Mr. Whitlock and Ms. Frontiera only due to Eleventh Amendment immunity. The Court previously found "that there [were] insufficient allegations to support any retaliation by Ms. Frontiera. . . . [because there were] no allegations that Ms. Frontiera was ever aware of the environmental lawsuit and that, even if she was, her actions against [Plaintiff] were connected in any way to [Plaintiff's] involvement in the lawsuit." *Id*. at 15. Similarly, this Court found that Mr. Whitlock's involvement as the lead counsel representing the District in the environmental lawsuit was, alone, not enough to show that Ms. Grigorescu's adverse employment action four years later was substantially motivated by retaliation for her participation in the earlier litigation. *Id*. The Court gave Ms. Grigorescu leave to amend.

To state a claim for violation of the First Amendment under 42 U.S.C. section 1983, a plaintiff must show (1) that she engaged in protected activity; (2) that the defendant took adverse

12

employment action; and (3) that her speech was a substantial or motivating factor for the adverse employment action." *Turner v. City & Cty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015) (citing *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003)). Defendants do not dispute that Ms. Grigorescu ultimately received an adverse employment action. The Parties dispute whether Ms. Grigorescu's engagement in the 2011 environmental litigation constitutes protected activity and whether the protected activity was a substantial or motivating factor to Ms. Grigorescu's adverse employment action.

The SAC describes, in detail, Ms. Grigorescu's "prominent and identifiable" participation in the environmental litigation. *See* SAC ¶¶ 105, 110–11. Ms. Grigorescu also describes the length of the on-going environmental litigation and provides additional details regarding Mr. Whitlock's prior role as lead defense counsel for the District. SAC ¶ 112. Ms. Grigorescu's position is that, because the litigation lasted over eight years and because of Mr. Whitlock and Ms. Frontiera's "high position[s] in the District's managerial hierarchy," it is reasonably inferred that "Defendants [Mr.] Whitlock and [Ms.] Fronteria had both constructive and actual notice of Plaintiff's protective activity[.]" SAC ¶ 113.

The SAC is quite detailed in pleading Ms. Grigorescu's involvement in the *Friends* suit. *See, e.g.*, SAC ¶ 105 (Ms. Grigorescu organized support for opposition, disseminated information about Friends, recruited, donated money, appeared at meetings, attended court hearings, etc.). The SAC is, however, devoid of allegations suggesting Ms. Frontiera "had any motive to take adverse action in response to Plaintiff's alleged First Amendment activities."

Regarding Mr. Whitlock, the Court already rejected the argument presented in the SAC— namely, that because Mr. Whitlock served as counsel for the District in the environmental litigation, he had a vendetta against Plaintiff when he became Vice Chancellor of Human Resources for the District in 2014, three years after Plaintiff's involvement in the *Friends* suit. The SAC fails to allege facts explaining the lack of temporal proximity between Ms. Grigorescu's protected activity (which began in 2011) and her adverse employment action (her termination in 2017), six years later.

As pled, the SAC alleges that Mr. Whitlock's first adverse employment action against Ms.

13

1 Grigorescu came years after the *Friends* suit and nine months after he became VCHR. Given the time between the adverse action and her earlier involvement in the *Friends* lawsuit (three years) and Mr. Whitlock becoming VCHR (nine months), there is insufficient temporal proximity in time to imply retaliatory motive absent some other indication. At the hearing, counsel for Ms. Grigorescu represented, under his Rule 11 obligations, that he could supplement the pleadings with additional factual allegations that Mr. Whitlock took adverse actions against Ms. Grigorescu before he assumed the role of VCHR. Stated differently, plaintiff's counsel represented that there are allegations that Mr. Whitlock adversely affected Ms. Grigorescu's employment as early as 2011 (by influencing District employees with decision-making authority vis-a-vis Ms. Grigorescu's involvement with *Friends*). He also represented there is evidence that Mr. Whitlock took adverse action against Plaintiff shortly after he became VCHR.

The Court therefore **GRANTS** Defendants' motion to dismiss the SAC's Section 1983 claim for retaliatory harassment **without prejudice**. Ms. Grigorescu shall be given leave to amend because of her representations under Federal Rule of Civil Procedure 11 to the Court.

Plaintiff's counsel did not make any representations about amending to include Ms. Frontiera's actions. Because Ms. Grigorescu provides no new facts that connect Ms. Frontiera's actions to Ms. Grigorescu's involvement in the environmental lawsuit, the Court **GRANTS** Defendants' motion to dismiss as to Ms. Frontiera **with prejudice**.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. More specifically:

- The Title VII claims are dismissed with prejudice;
- The Section 1981 claim for race-based harassment is dismissed with prejudice;
- The Section 1983 claim against Mr. Whitlock and Ms. Frontiera for retaliatory harassment is dismissed but with leave to amend only against Mr. Whitlock; and
- The Section 1981 claim for termination against Mr. Whitlock and Ms. Frontiera for race-based termination is dismissed but with leave to amend only against Mr. Whitlock.

Any amended complaint must be filed within thirty (30) days from the date of this order. This order disposes of Docket No. 29.

**IT IS SO ORDERED**.

Dated: August 29, 2019

_____
EDWARD M. CHEN
United States District Judge